[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-15499

_____

D.C. No. 1:13-cv-03573-HLM

FLANIGAN'S ENTERPRISES, INC. OF GEORGIA,
FANTASTIC VISUALS, LLC,

Plaintiffs-Appellants,

MELISSA DAVENPORT,
MARSHALL G. HENRY,

Intervenors-Plaintiffs-Appellants,

versus

CITY OF SANDY SPRINGS, GEORGIA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 23, 2017)

Before ED CARNES, Chief Judge, TJOFLAT, HULL, MARCUS, WILSON, WILLIAM PRYOR, MARTIN, JORDAN, ROSENBAUM, JULIE CARNES, JILL PRYOR, and ANDERSON,* Circuit Judges.**

ANDERSON, Circuit Judge:

We granted rehearing en banc to review the constitutionality of a municipal ordinance prohibiting the sale of sexual devices in light of several recent Supreme Court decisions which, it was argued, call into question the continued vitality of this Court's decision in Williams v. Attorney General (Williams IV), 378 F.3d 1232 (11th Cir. 2004). After we agreed to take the case en banc, the defendant City repealed the challenged portion of its municipal code and, thus, we are confronted with the threshold jurisdictional question of mootness. Because we see no reasonable basis for concluding that the ordinance will be reenacted and because a prayer for nominal damages, by itself, is insufficient to satisfy Article III's jurisdictional requirements, this case is moot. Accordingly, the appeal must be dismissed.

I.    Background

---

* Senior Judge R. Lanier Anderson elected to participate in this decision pursuant to 28 U.S.C. § 46(c).

** Judge Kevin C. Newsom joined the Court on August 4, 2017, and did not participate in these en banc proceedings.

In 2009, the City of Sandy Springs, Georgia, (the "City") enacted into law several provisions that, inter alia, prohibited the sale of sexual devices within the City. Specifically, Ordinance 2009-04-24 (the "Ordinance"), codified at Section 38-120 of the City's Code of Ordinances (the "Code"), criminalized the commercial distribution of obscene material, which it defined to include "[a]ny device designed or marketed as useful primarily for the stimulation of human genital organs." Sandy Springs, Ga., Code of Ordinances § 38-120(c).

Shortly after its passage, a group of businesses, including, as relevant here, plaintiff-appellant Fantastic Visuals, LLC, d/b/a Inserection ("Inserection"),[1] brought suit to challenge the Ordinance and several other Code provisions. Inserection is an adult bookstore in Sandy Springs that sells sexually explicit materials, including sexual devices. After the City moved for summary judgment, the district court issued an order severing Inserection's challenge to the

---

[1]    Inserection was joined in its initial complaint by plaintiffs-appellants 6420 Roswell Rd., Inc. ("Flashers") and Flanigan's Enterprises, Inc. of Georgia ("Flanigan's"). Although both Flashers and Flanigan's noticed an appeal to this Court, neither party provided briefing of its own or indicated that Inserection brought any claim on its behalf. This is likely because, as the en banc briefing indicates, only Inserection purchases and sells sexual devices. In any event, by failing to provide any briefing whatsoever, both Flashers and Flanigan's have abandoned their appeal. Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 680–81 (11th Cir. 2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed."). Accordingly, Inserection is the only original plaintiff that is properly before the Court.

3

Ordinance's prohibition on the sale of sexual devices from the remainder of the pending challenges to other Code provisions. As a result, this appeal involves only a challenge to the City's ban on the sale of sexual devices.

Severing the two challenges allowed additional affected parties to intervene in the instant case without slowing the progress of the other litigation. Accordingly, the district court granted a timely motion to intervene by intervenors-appellants Melissa Davenport ("Davenport") and Marshall G. Henry ("Henry"). Davenport is a Georgia resident who suffers from multiple sclerosis and uses sexual devices with her husband to facilitate intimacy. She seeks to purchase sexual devices in Sandy Springs for her own use and to sell sexual devices to others in Sandy Springs who suffer from the same or a similar condition. Henry, also a Georgia resident, is an artist who uses sexual devices in his artwork. He seeks to purchase sexual devices in Sandy Springs for his own private, sexual activity and for use in his artwork. He also seeks to sell his artwork in the City. Inserection, Davenport, and Henry (collectively, "Appellants") raised several challenges to the Ordinance arising under both the United States and Georgia Constitutions, including, as relevant here, a Fourteenth Amendment Due Process

4

claim.[2] Appellants specifically requested declaratory and injunctive relief striking down the Ordinance as unconstitutional and permanently enjoining its enforcement. Additionally, both Davenport and Henry requested an award of nominal damages against the City.[3]

The City moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The district court granted the City's motion and entered an order upholding the Ordinance. Appellants filed a timely notice of appeal, arguing that the district court erred in entering judgment in favor of the City. A panel of this Court, after briefing and oral argument, found that the district court committed no reversible error and affirmed. Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs, 831 F.3d 1342, 1344 (11th Cir. 2016), vacated, — F.3d —, 2017 WL 975958 (11th Cir. Mar. 14, 2017). The panel held that it was bound to

---

[2]    Appellants also brought challenges arising under various other provisions of the United States Constitution and corollary provisions of the Georgia constitution. As a result of deficiencies in either their initial appellate briefing, Sapuppo, 739 F.3d at 680–81, or their en banc petition and briefing, Fed. R. App. P. 40(a)(2), Appellants have waived all but their Fourteenth Amendment Due Process claim. In any event, given that our ultimate resolution of this case requires dismissal before reaching the merits, the substantive claims before the Court are immaterial.

[3]    Inserection's complaint included a prayer for "such other and further relief as the Court deems just and proper." We need not, and expressly do not, consider whether this blanket request would be sufficient to raise the availability of nominal damages. See Oliver v. Falla, 258 F.3d 1277, 1280–82 (11th Cir. 2001) (discussing waiver of claims for nominal damages).

5

follow the holding in Williams IV and suggested that Appellants seek rehearing en banc. Id. at 1348 ("Therefore, unless and until our holding in Williams IV is overruled en banc, or by the Supreme Court, we are bound to follow it. . . . Appellants are free to petition the court to reconsider our decision en banc, and we encourage them to do so.").

On March 14, 2017, a majority of the judges of this Court in active service voted in favor of granting rehearing en banc and the panel opinion was, accordingly, vacated. On March 21, 2017—one week after rehearing was granted—the City Council unanimously voted to repeal the portion of its Ordinance at issue in this appeal. See Sandy Springs, Ga., Ordinance 2017-03-05 (Mar. 21, 2017). Citing this repeal, the City subsequently filed a motion to dismiss for mootness in which it, through its attorney, expressly "disavow[ed] any intent to adopt such a regulation in the future." The parties submitted further briefing on the issue of mootness and the City's motion was carried with the case to oral argument.

After briefing on the merits had been completed, oral argument was held before the en banc Court on June 6, 2017. On the same day—in a move it argues was designed to "endorse" its attorney's representations at oral argument—the City passed a resolution regarding the now-repealed Ordinance. See Sandy Springs, Ga., Resolution 2017-06-85 (June 6, 2017). In this resolution, which also passed

6

unanimously, the City: (1) noted that the Ordinance "was never enforced during the years that it was in effect;" (2) "disavow[ed] any intent to reenact [the Ordinance] or any similar regulation;" and (3) claimed that the repeal of the Ordinance "eliminated an inconsistency in the City's Code between the [now-repealed] prohibition on the sale of obscene devices and the City's zoning and licensing ordinances that license and regulate stores which sell them." Moreover, the City conceded that its interest in minimizing the secondary effects of the sale of sexual devices—one of the two grounds on which the City had defended the Ordinance—was effectively served by its existing zoning and licensing regulations. Pursuant to, and in compliance with, Rule 28(j) of the Federal Rules of Appellate Procedure, the City advised the Court of its resolution on the same day it was passed.

## II.    Standard of Review

We consider the question of mootness de novo. Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1328 (11th Cir. 2004).

## III.    Discussion

It is well established that "[u]nder Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477, 110 S. Ct. 1249, 1253 (1990). At a minimum, this requirement means that "a litigant must have suffered, or be

7

threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Id. at 477, 110 S. Ct. at 1253. Moreover, this "actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Arizonans for Official English v. Arizona, 520 U.S. 43, 67, 117 S. Ct. 1055, 1068 (1997) (quoting Preiser v. Newkirk, 422 U.S. 395, 401, 95 S. Ct. 2330, 2334 (1975)). As a result, the Supreme Court has routinely cautioned that a case becomes moot "if an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party." Church of Scientology of Cal. v. United States, 506 U.S. 9, 12, 113 S. Ct. 447, 449 (1992) (quoting Mills v. Green, 159 U.S. 651, 653, 16 S. Ct. 132, 133 (1895)). Thus, even a once-justiciable case becomes moot and must be dismissed "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496, 89 S. Ct. 1944, 1951 (1969).

Addressing our jurisdiction in the instant case requires us to undertake two related inquires. First, we must ask whether the City's repeal of the relevant portion of the Ordinance has rendered moot Appellants' claims for declaratory and injunctive relief. If those claims are moot, we must then consider whether their prayer for nominal damages is sufficient to save an otherwise non-justiciable case. We address each in turn.

8

### A. Declaratory and Injunctive Relief

As discussed above, a case generally becomes moot and must be dismissed, even if already on appeal, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Id. at 496, 89 S. Ct. at 1951. The doctrine of voluntary cessation, however, provides an important exception to this general rule. Indeed, as the Supreme Court has long recognized, the "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." United States v. W. T. Grant Co., 345 U.S. 629, 632, 73 S. Ct. 894, 897 (1953). Without this exception, the federal courts would be compelled to dismiss a case while leaving the defendant "free to return to his old ways." Id. at 632, 73 S. Ct. at 897.

However, the voluntary cessation exception to the mootness doctrine does not apply where "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189, 120 S. Ct. 693, 708 (2000) (quoting United States v. Concentrated Phosphate Exp. Ass'n, 393 U.S. 199, 203, 89 S. Ct. 361, 364 (1968)). Thus, intervening events will render a case moot only when we have "no 'reasonable expectation' that the challenged practice will resume after the lawsuit is dismissed." Jews for Jesus, Inc. v. Hillsborough Cty. Aviation Auth., 162 F.3d 627, 629 (11th Cir. 1998) (quoting County of Los

9

Angeles v. Davis, 440 U.S. 625, 631, 99 S. Ct. 1379, 1383 (1979)). The test for determining that no such reasonable expectation exists is ordinarily a "stringent" one and, accordingly, the party asserting mootness generally bears a "'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again." Laidlaw, 528 U.S. at 189, 120 S. Ct. at 708 (alteration in original) (quoting Concentrated Phosphate, 393 U.S. at 203, 89 S. Ct. at 364).

While it is true that the burden of proving mootness generally falls heavily on the party asserting it, "governmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities." Coral Springs, 371 F.3d at 1328–29. As a result, "once the repeal of an ordinance has caused our jurisdiction to be questioned, [the plaintiff] bears the burden of presenting affirmative evidence that its challenge is no longer moot." Nat'l Advert. Co. v. City of Miami, 402 F.3d 1329, 1334 (11th Cir. 2005). This is because both this Court and the Supreme Court have repeatedly indicated that "the repeal of a challenged statute is one of those events that makes it absolutely clear that the allegedly wrongful behavior . . . could not reasonably be expected to recur." Harrell v. The Fla. Bar, 608 F.3d 1241, 1265–66 (11th Cir. 2010) (alteration in original) (quoting Coral Springs, 371 F.3d at 1331 n.9); see also Coral Springs, 371 F.3d at 1329, 1330, 1331 n.9 (citing "numerous occasions" where the Supreme Court has held that the

10

repeal of challenged legislation mooted a case and noting that our view, under which "the doctrine of voluntary cessation does not apply in cases where challenged laws have been repealed unless there is some reason to believe that the law may be reenacted after dismissal of the suit," is "altogether consonant with that of every other Federal Circuit to address the issue"). Because of the deference with which we view voluntary changes in government action, a plaintiff disputing a finding of mootness must present more than "[m]ere speculation that the City may return to its previous ways." City of Miami, 402 F.3d at 1334 ("Mere speculation that the City may return to its previous ways is no substitute for concrete evidence of secret intentions.").

Indeed, even where the intervening governmental action does not rise to the level of a full legislative repeal we have held that "a challenge to a government policy that has been unambiguously terminated will be moot in the absence of some reasonable basis to believe that the policy will be reinstated if the suit is terminated." Troiano v. Supervisor of Elections, 382 F.3d 1276, 1285 (11th Cir. 2004). In Troiano, a panel of this Court collected cases from both the Supreme Court and Eleventh Circuit and said:

> When government laws or policies have been challenged, the Supreme Court has held almost uniformly that cessation of the challenged behavior moots the suit. The Court has rejected an assertion of mootness in this kind of challenge only when there is a

11

> substantial likelihood that the offending policy will be reinstated if the suit is terminated.

Id. at 1283–84 (emphasis in original) (citations to multiple Supreme Court cases omitted). The key inquiry in this mootness analysis therefore is whether the evidence leads us to a reasonable expectation that the City will reverse course and reenact the allegedly offensive portion of its Code should this Court grant its motion to dismiss. See Coral Springs, 371 F.3d at 1331 ("Whether the repeal of a law will lead to a finding that the challenge to the law is moot depends most significantly on whether the court is sufficiently convinced that the repealed law will not be brought back." (emphasis added)).

From both the cases discussed above and those described in more detail below, we can discern the appropriate analysis, including three broad factors to which courts should look for guidance in conducting that inquiry. See Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga., 633 F.3d 1297, 1310 (11th Cir. 2011) (Tjoflat, J., suggesting these three broad factors and citing cases from which they are derived). First, we ask whether the change in conduct resulted from substantial deliberation or is merely an attempt to manipulate our jurisdiction. Id. Thus we will examine the timing of the repeal, the procedures used in enacting it, and any explanations independent of this litigation which may have motivated it. Second, we ask whether the government's decision to terminate the

12

challenged conduct was "unambiguous." Id. This requires us to consider whether the actions that have been taken to allegedly moot the case reflect a rejection of the challenged conduct that is both permanent and complete. Third, we ask whether the government has consistently maintained its commitment to the new policy or legislative scheme. Id. When considering a full legislative repeal of a challenged law—or an amendment to remove portions thereof—these factors should not be viewed as exclusive nor should any single factor be viewed as dispositive. Rather, the entirety of the relevant circumstances should be considered and a mootness finding should follow when the totality of those circumstances persuades the court that there is no reasonable expectation that the government entity will reenact the challenged legislation.

Before applying this law to the instant facts, we find it instructive to discuss some additional precedent that informs our analysis, focusing particularly on our cases in which the timing of a legislative repeal was at issue. We begin with an opinion, National Advertising Co. v. City of Fort Lauderdale, 934 F.2d 283 (11th Cir. 1991), we think is in possible tension with the landscape we describe. In that case, an outdoor advertising company challenged the City of Fort Lauderdale's sign ordinance, alleging a series of constitutional deficiencies. Id. at 284. Six weeks after the company filed suit, the city amended the sign code and, the next day, moved to dismiss the case as moot. Id. at 284–85. The district court dismissed

13

the claims as moot but a panel of this Court reversed, based primarily on the Supreme Court's decision in City of Mesquite v. Aladdin's Castle, Inc. Id. at 285–86 (citing 455 U.S. 283, 102 S. Ct. 1070 (1982)). In so doing, the panel relied on the Supreme Court's observation that there "was no certainty that the City of Mesquite would not reenact the allegedly unconstitutional provision if it defeats federal jurisdiction." Id. at 286 (citing City of Mesquite, 455 U.S. at 289, 102 S. Ct. at 1075 ("There is no certainty that a similar course [of reenactment] would not be pursued if its most recent amendment were effective to defeat federal jurisdiction.")).

Considered in isolation—particularly given its lack of any other apparent reason for harboring a reasonable expectation that the city would reenact its sign code—City of Fort Lauderdale could be construed to imply that the timing of a city's repeal is dispositive of whether we think it will reenact.[4] We reject that reading. Indeed, the panel did not even mention the timing of the amendment in its

---

[4]    The City of Fort Lauderdale Court held that "[i]t remains uncertain whether the City would" reenact because it "presently possesses the power and authority to amend the sign code." Nat'l Advert. Co. v. City of Fort Lauderdale, 934 F.2d 283, 286 (11th Cir. 1991). Under our case law, the mere power and authority to reenact is plainly an insufficient reason, standing alone, to raise a reasonable expectation that the city would do so. Given that the only other justification for such a belief apparent from the face of the opinion is the timing of the repeal, it could be suggested that this timing played a dispositive role in the Court's decision.

14

sparse rationale; the six-week gap between the filing of the suit and the amendatory legislation was mentioned solely in its recitation of the facts.

Rather, the City of Fort Lauderdale rationale is based entirely on City of Mesquite. That reliance was misplaced. While it is true that the Supreme Court did say that "[t]here is no certainty" that the City of Mesquite would not reenact the challenged provision, City of Mesquite, 455 U.S. at 289, 102 S. Ct. at 1075, the Court's lack of certainty was expressly based upon two crucial facts that are not apparent in City of Fort Lauderdale, and are not present in the instant case. First—at oral argument before the Supreme Court—the City of Mesquite expressly conceded its intention to reenact precisely the same provision if the district court's judgment were vacated. Id. at 289 n.11, 102 S. Ct. at 1075 n.11. Second, the city had previously reinstated a related restriction in an "obvious" attempt to avoid the effects of an earlier state court ruling. Id. at 289, 102 S. Ct. at 1075. In other words, not only had the city revealed a propensity to repeal and then reenact allegedly offensive legislation when litigation interfered with its policy objectives, it had also expressly stated its intention of doing so in that case. Neither of these factors is apparent in City of Fort Lauderdale and, accordingly, that panel's reliance on the well-founded lack of certainty in City of Mesquite was misplaced. Nor, given its lack of analysis on the issue, can we conclude that City of Fort Lauderdale provides us with much precedent, if any, for the proposition that the timing of

15

repealing legislation, by itself, is sufficient evidence to support a reasonable expectation that the governmental entity will reenact repealed legislation. Certainly, it should not be read to suggest that such timing should be deemed dispositive.

In a case with a similar posture, National Advertising Co. v. City of Miami, 402 F.3d 1329 (11th Cir. 2005), the plaintiff—apparently the same National Advertising Company that was the plaintiff in City of Fort Lauderdale—brought a constitutional challenge to the sign provisions of the City of Miami's zoning ordinance. Id. at 1330–31. Sometime after plaintiff filed suit, the city began the process of amending its zoning regulations pertaining to signs and, ten months after litigation began, adopted amendments addressing "all the complaints" raised by plaintiff. Id. at 1331, 1335. Although it squarely confronted the question of timing, and any inference of motivation that could be drawn therefrom, the panel focused instead on the key inquiry guiding these determinations:

> There is some dispute as to when the process of amending the City's zoning ordinance began. However, since we conclude that the City has no intention of re-enacting the allegedly unconstitutional segments of the zoning code, we need not decide what initially motivated the City's comprehensive overhaul of its entire zoning ordinance.

Id. at 1331 n.3. The Court went on to hold that the city's "purpose in amending the statute is not the central focus of our inquiry nor is it dispositive of our decision."

16

Id. at 1334. Thus, City of Miami suggests—correctly in our view—that the timing of a legislative repeal will not, standing alone, create a reasonable expectation that the government entity will reenact challenged legislation. As that Court noted, "[r]ather, the most important inquiry is whether we believe the City would re-enact the prior ordinance." Id.

Lastly, our en banc case in Tanner Advertising Group, L.L.C. v. Fayette County, Georgia, 451 F.3d 777 (11th Cir. 2006) (en banc), further persuades us that the timing of repealing legislation should not be dispositive of our inquiry into whether there is a reasonable expectation of reenactment. There the plaintiff, Tanner, challenged a county sign ordinance, alleging several constitutional infirmities. Id. at 781. After the district court denied relief and a panel of this Court reversed, we granted a petition for rehearing en banc. Id. at 783–84. The day after we agreed to take the case en banc—nearly three years into the litigation—the county repealed its sign ordinance and enacted a new plan substantially changing, with one exception, all of the provisions challenged in Tanner's original complaint. Id. at 784.

Regarding those challenged provisions addressed by the new ordinance, our en banc Court unanimously held that "the repeal of the [previous] Sign Ordinance and the enactment of the [new] Sign Ordinance rendered moot the challenges brought by Tanner." Id. at 785. The Court reasoned:

17

"This Court and the Supreme Court have repeatedly held that the repeal or amendment of an allegedly unconstitutional statute moots legal challenges to the legitimacy of the repealed legislation." Nat'l Adver. Co. v. City of Miami, 402 F.3d 1329, 1332 (11th Cir. 2005), cert. denied, 546 U.S. 1170, 126 S. Ct. 1318, 164 L. Ed. 2d 48 (2006). A "superseding statute or regulation moots a case . . . to the extent that it removes challenged features of the prior law." Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1310 (11th Cir. 2000). If the repeal is such that "the allegedly unconstitutional portions of the [challenged] ordinance no longer exist," the appeal is rendered moot because "any decision we would render would clearly constitute an impermissible advisory opinion." Nat'l Adver. Co., 402 F.3d at 1335.

Id. at 789–90 (alterations in original). The timing of the legislative repeal in Tanner—which is very similar to that of the instant case—not only did not drive the inquiry in that case, it did not even warrant mentioning in the rationale for the mootness holding. Moreover, Tanner's heavy reliance on City of Miami, and corresponding lack of reliance on City of Fort Lauderdale, bolsters our conclusion that the timing of repealing legislation should not control the mootness inquiry. Accordingly, in the context of a full repeal of allegedly unconstitutional legislation, we hold that the timing of the repealing legislation is not dispositive if the court concludes from other evidence that there is no reasonable expectation that the

18

governmental actor will reenact the challenged provisions.[5] To the extent that City of Fort Lauderdale suggests otherwise, it is no longer precedential.

We turn now to apply the foregoing principles of law to the instant facts, using the broad factors detailed above to inform our ultimate inquiry into whether the totality of the circumstances indicates that there is a reasonable expectation that the City here will reenact the repealed legislation. We conclude there is no substantial evidence indicating a reasonable likelihood that the City will reenact the challenged provision which it has now repealed. To the contrary, there is very substantial evidence leading us to believe that there is no reasonable expectation that the same or a similar provision will be reenacted.

Considering the first broad factor, Appellants have argued that the timing of this repeal—years into the litigation and after we agreed to rehear the case en banc—is not the result of substantial deliberation but, rather, reflects a plain attempt to manipulate the Court's jurisdiction. We are not unsympathetic to this argument. However, under the full analysis required by this factor we find it

---

[5]    Of course, the timing of the repealing legislation is one of the relevant factors to be considered as a court embarks on the mootness inquiry. See Harrell v. The Fla. Bar, 608 F.3d 1241, 1265–68 (11th Cir. 2010) ("timing and content" of a voluntary decision to cease a challenged activity are relevant). We hold only, along with Tanner and City of Miami, that when other evidence has persuaded a court that there is no reasonable expectation that a government actor will reenact repealed legislation, the timing of repealing legislation, alone, will not avoid mootness.

19

instructive that the City has engaged in substantial deliberation—having twice voted on the relevant remedial measures—and has put forth persuasive explanations that are not dependent upon this litigation.

As an initial matter, the facts here are far removed from those cases in which the procedures used to effect a change have given us pause about the level of deliberation attending a change in policy. Cf. Harrell, 608 F.3d at 1267 ("[T]he Board acted in secrecy [and] me[t] behind closed doors . . . ."); id. ("[I]n doing so, it may have departed from its own procedures."). On the contrary, here the City Council voted on both the Ordinance's repeal and the resolution regarding that repeal in open session during regularly scheduled meetings. Both measures were placed on the Council's published agenda and are reflected in their meeting minutes. The repeal itself was passed unanimously with all members present and, although a single member was missing for the second vote, the resolution regarding the repeal was likewise passed without objection. In short, the procedures used by the City to repeal the Ordinance reflect the same level of deliberation we would expect for any other change in policy.

Additionally, the City has offered persuasive explanations, not dependent upon this litigation, to explain its course of conduct in repealing the Ordinance. Compare Troiano, 382 F.3d at 1285 ("[Defendant's] decision to implement the changes in the voting machines was well reasoned . . . ."), with Harrell, 608 F.3d at

20

1267 ("[T]he Board . . . fail[ed] to disclose any basis for its decision."). Here, the City has provided two compelling explanations. First, it has pointed out that the Ordinance's repeal had the effect of removing an inconsistency between the repealed provision and other applicable regulations. Indeed, while the Ordinance at issue here banned the sale of sexual devices throughout the City, entirely separate provisions of the Code contemplate such sales and regulate the same through license and zoning requirements for stores that would sell such devices.[6] As counsel for the City observed at oral argument, and as the City acknowledged in its resolution regarding the repeal, these two provisions are plainly inconsistent.[7]

---

[6]   Section 26-22 of the City's Code defines an adult bookstore as "a commercial establishment or facility in the city that maintains 25 percent or more of its floor area for the display, sale, and/or rental of . . . [i]nstruments, devices, novelties, toys or other paraphernalia that are designed for use in connection with specified sexual activities as defined herein or otherwise emulate, simulate, or represent 'specified anatomical areas.'" Such bookstores are subject to a series of zoning and licensing restrictions established by other provisions of the Code.

[7]   While the two sets of provisions are inconsistent with each other, they are not flatly contradictory. The repealed Ordinance provided an affirmative defense against the unlawful sale of sexual devices when "done for a bona fide medical, scientific, educational, legislative, judicial, or law enforcement purpose." It is, of course, possible—although probably not likely—that a store could maintain a sufficient inventory of sexual devices exclusively for these "bona fide" sales that it would be subject to regulation under § 26-22 without running afoul of the Ordinance. Conversely, Davenport—who did not maintain a brick-and-mortar location but still wished to sell these devices—may have been subject to the repealed Ordinance but not § 26-22. Nonetheless, the two provisions are in sufficient tension that we consider the City's proffered explanation for the repeal persuasive.

21

Secondly, even if the Ordinance were not inconsistent with other provisions of the Code, the City has conceded that it is unnecessary to accomplish one of the key goals of passing it: elimination of the harmful secondary effects of shops that sell the banned devices. Indeed, in the Ordinance itself the City argued that it was being enacted to achieve the City's "substantial government interest in preventing the negative secondary effects of establishments which trade in indecent and obscene materials." It raised this argument before both the district court, ("[T]he Ordinance identifies the City's interest in preventing the negative secondary effects associated with establishments that trade in obscene materials . . . ."), and the initial panel, ("The City's purpose in enacting the Ordinance was to protect order and morality and prevent the negative secondary effects associated with establishments that trade in obscene materials."). However, in its resolution regarding the repeal, the City has now rejected that justification and conceded, with regard to the feared secondary effects, that the Ordinance is redundant because "[t]h[e] zoning and licensing regulations serve the City's secondary effects interests relative to the sale of [sexual] devices." Thus the City has, apparently, recognized that it has no need for one of the two reasons it offered as justifying the now-repealed Ordinance.

It would certainly have strengthened the City's case if it had been more expedient in its recognition of the contradictory nature of its code provisions and

22

its ability to control the deleterious secondary effects of "sex shops" through licensure and zoning requirements. Nonetheless, the City Council has now twice gathered in open session and unanimously passed measures rejecting the challenged Ordinance. With the first, it repealed the challenged section of the City's Code. With the second, it identified an internal inconsistency warranting the change and conceded one of the two grounds on which it had originally justified the Ordinance. While we might in other circumstances have been skeptical of the late hour at which they have engaged in these measures, such timing is not dispositive and in this case there is persuasive evidence of legitimate explanations for the repeal. See supra discussion of City of Miami and Tanner. We are ultimately convinced that the City has undertaken the "substantial deliberation" required to assure this Court that there is no reasonable expectation that it will reenact the allegedly offensive provision of its Code. Thus, the first prong of our inquiry supports the conclusion that this case is moot.

On the second prong of our inquiry, Appellants fare no better: the City's repeal is plainly an unambiguous termination of the challenged conduct. As an initial matter, the City has not merely declined to enforce the Ordinance against these Appellants; it has removed the challenged portion in its entirety. Cf. Harrell, 608 F.3d at 1268 ("Perhaps the Board . . . has merely decided 'not [to] enforce [the Rule] against [Harrell] in this case.'") (final three alterations in original) (quoting

23

Graham v. Butterworth, 5 F.3d 496, 500 (11th Cir. 1993)). Moreover, the City has gone beyond a mere repeal and has assured this Court—now on three separate occasions—that it has no intention of reenacting the Ordinance. First, in its motion to dismiss for mootness, the City's attorney expressly warranted that it "disavows any intent to adopt such a regulation in the future." We have previously relied on such representations in filings with this Court in the very circumstance we consider here. See Coral Springs, 371 F.3d at 1333 ("[T]he City's brief repeatedly represented that there was 'no indication whatsoever that the City would reenact the [offending code provisions] in the future.'"). Likewise, at oral argument, counsel reiterated that "when the City authorized [him] to file the motion to dismiss this appeal as moot based on the legislative repeal of this Ordinance, [it] authorized [him] to say the City disavows any intent to reenactment." Cf. id. (relying on representations made at oral argument to justify a conclusion that the challenged provisions would not be reenacted). Finally—lest there be any doubt about counsel's ability to bind the City to the representations made in the motion and at oral argument—the City Council itself passed a resolution expressly "disavow[ing] any intent to reenact [the Ordinance] or any similar regulation."

We are cognizant of the fact that the City defended its Ordinance for nearly a decade and, even at en banc oral argument, declined to concede that it was unconstitutional. However, our jurisdiction turns on the presence of a live

24

controversy throughout the litigation and, in this context, that turns on whether there is a reasonable expectation that the City will reenact the challenged legislation. Whether the City defended the Ordinance and/or continues to believe it was constitutional[8] provides only weak evidence, if any, that its repeal was ambiguous and, therefore, that the City will reenact the legislation. The City has unanimously enacted a full and public repeal of the challenged provision; its counsel has—on two separate occasions—warranted its commitment to the repeal; and it has unanimously and publicly adopted a resolution affirming those representations. These actions suggest precisely the type of unambiguous termination from which we are unable to draw a reasonable expectation that the City will reenact the challenged legislation. Accordingly, the second prong of our analysis counsels in favor of dismissing this case as moot.

Finally, under the third factor we would normally consider whether the City has maintained its commitment to the new legislative scheme. Here, although we are unable to adequately judge its commitment to the new scheme given the late

--------

[8]    Our jurisdiction does not turn on a party's beliefs; to hold otherwise would turn the federal courts into glorified debating societies. See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472, 102 S. Ct. 752, 758 (1982) ("[Article III standing] tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action.").

25

stage at which it has been adopted, we are comforted by the City's persuasive and public commitment not to reenact the repealed provision, as well as its demonstrated lack of commitment to enforcing the old scheme. Indeed, although Appellants note that they and others similarly inclined may have complied with the now-repealed Ordinance, they have not suggested that the City ever attempted to enforce the sanctions attending the Ordinance.[9] Thus, where the City has shown no inclination towards enforcing the old scheme, we are inclined to believe that the repeal of an otherwise unenforced code provision and the public embrace of that decision sufficiently serves to underscore the City's commitment to its new legislative scheme.[10]

Beyond the factors we would normally consider when evaluating the question of mootness, our history with cases in a similar posture clearly suggests that dismissal is the proper course. As noted above, our Tanner case involved a

---

[9] Those in violation of the Ordinance were subject to "a fine not exceeding $1,000.00, imprisonment for a term not exceeding six months, confinement at labor for a period of time not to exceed 30 days, or any combination thereof." Sandy Springs, Ga., Code of Ordinances § 1-10(c).

[10] We do not, of course, mean to suggest that if the City were to reenact the Ordinance a potential plaintiff would be required to wait for the City to levy sanctions before filing suit. That is a different question for a different day. We are merely suggesting that the long history of non-enforcement, coupled with the recent repeal, indicates the commitment to a new legislative scheme that we have traditionally required in these situations.

26

similar late-stage repeal by a governmental body and we nonetheless dismissed the bulk of the complaint as moot. 451 F.3d at 789. Moreover, the late-stage repeal was not even mentioned in the Tanner opinion's discussion of the rationale for its mootness holding. And, in stark contrast to the instant case, it was not apparent that the government actor in Tanner had "disavowed" an intent to reenact the challenged ordinance, that it had offered alternative reasons for the repeal, or that there was any history of non-enforcement. We believe that mootness in the instant case finds strong support in Tanner.

In short, the City has repealed its Ordinance. It did so unambiguously and unanimously, in open session, and during a regularly scheduled meeting of its City Council. It has offered persuasive reasons for doing so. And it has expressly, repeatedly, and publicly disavowed any intent to reenact a provision that it never enforced in the first place. Against those facts, there is no reasonable expectation that the City will return to its previous Ordinance. Accordingly, we are simply unable to conclude that the claims for declaratory and injunctive relief are properly before us.

27

## B. *Nominal Damages*

Having determined that the claims for declaratory and injunctive relief are moot, we must decide whether a prayer for nominal damages—Appellants' lone remaining claim[11]—is sufficient to save this otherwise moot constitutional challenge. To be sure, there are cases in which a judgment in favor of a plaintiff requesting only nominal damages would have a practical effect on the parties' rights or obligations.[12] Likewise, there are situations in which nominal damages will be the only appropriate remedy to be awarded to a victorious plaintiff in a live

---

[11]    Appellants did not request actual or compensatory damages. See Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 8–9, 98 S. Ct. 1554, 1559–60 (1978) (finding that a "claim for actual and punitive damages" arising from the challenged conduct will save a case from mootness where "that claim is not so insubstantial or so clearly foreclosed by prior decisions that [it] may not proceed"). Although Appellants did request attorney's fees under 42 U.S.C. § 1988, an "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 480, 110 S. Ct. 1249, 1255 (1990). Accordingly, Appellants' only remaining claim is for nominal damages.

[12]    In an opinion we discuss in greater detail below, then-Judge (now-Professor) McConnell of the Tenth Circuit suggests that "[w]hen neighboring landowners wish to obtain a legal determination of a disputed boundary, for example, one might sue the other for nominal damages for trespass." Utah Animal Rights Coal. v. Salt Lake City Corp., 371 F.3d 1248, 1264 (10th Cir. 2004) (McConnell, J., concurring). Likewise, "plaintiffs sometimes seek nominal damages in libel suits in order to vindicate their reputations by proving that the supposed libel was a falsehood." Id. We need not add to those examples but, rather, merely acknowledge that our holding here does not foreclose the exercise of jurisdiction in all cases where a plaintiff claims only nominal damages.

28

case or controversy.[13] In such circumstances, the exercise of jurisdiction is plainly proper. But there are also situations in which the same award would serve no purpose other than to affix a judicial seal of approval to an outcome that has already been realized. This case is squarely of that last variety. Appellants have already won. Their victory, while perhaps not expedient, is comprehensive. They have received all the relief they requested and there is nothing of any practical effect left for us to grant them. Because the availability of such a practical remedy is a prerequisite of Article III jurisdiction, we must conclude that the prayer for nominal damages will not sustain this case. Accordingly, we hold that in this case, involving a constitutional challenge to legislation that is otherwise moot, a prayer for nominal damages will not save the case from dismissal.

As we have discussed, Article III grants federal courts the power to "adjudicate only actual, ongoing cases or controversies." Lewis, 494 U.S. at 477, 110 S. Ct. at 1253. This requirement "subsists through all stages of federal judicial proceedings" and, at a minimum, requires that "a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Id. at 477, 110 S. Ct. at 1253 (emphasis

---

[13] See infra note 23.

added). As a result, "it has frequently [been] repeated that federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." North Carolina v. Rice, 404 U.S. 244, 246, 92 S. Ct. 402, 404 (1971) (per curiam). Therefore, a previously justiciable case is moot when the requested relief, if granted, would no longer have any practical effect[14] on the rights or obligations of the litigants.[15]

---

[14]    See Connell v. Bowen, 797 F.2d 927, 929 (11th Cir. 1986) (Clark, J., dissenting) ("Generally, an action is considered moot when it no longer presents a justiciable controversy because any determination of the matter will have no practical effect on the parties, as when the issues in the case have been resolved or have for some reason become academic from the point of view of the plaintiff."); see also Powell v. McCormack, 395 U.S. 486, 564, 89 S. Ct. 1944, 1986 (1969) (Stewart, J., dissenting) (arguing that a case is moot where it could not have "any conceivable practical impact"); City Ctr. W., LP v. Am. Modern Home Ins. Co., 749 F.3d 912, 913 (10th Cir. 2014) ("This appeal ceased to have any practical importance, and therefore became moot . . . ."); Norfolk S. Ry. Co. v. City of Alexandria, 608 F.3d 150, 161 (4th Cir. 2010) ("[P]arties lack [a legally cognizable] interest when, for example, our resolution of an issue could not possibly have any practical effect on the outcome of the matter." (citing Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs., 225 F.3d 1208, 1217 (11th Cir. 2000)); Utah Animal Rights, 371 F.3d at 1265 (McConnell, J., concurring) ("The award of nominal damages would serve no practical purpose, would have no effect on the legal rights of the parties, and would have no effect on the future.").

[15]    See Calderon v. Ashmus, 523 U.S. 740, 749, 118 S. Ct. 1694, 1699–1700 (1998) (finding a case non-justiciable within Article III when it would "have no coercive impact on the legal rights or obligations of either party"); see also Lewis, 494 U.S. at 478, 110 S. Ct. at 1254 ("The parties must continue to have a 'personal stake in the outcome' of the lawsuit." (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 101, 103 S. Ct. 1660, 1665 (1983))); Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240–41, 57 S. Ct. 461, 464 (1937) ("The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests."); id. at 241, 57 S. Ct. at 464 (requiring a "concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding" to proceed under the Declaratory Judgment Act).

In the instant case, the only injury of which Appellants complained, and thus the only one we have the power to remedy, was the existence of a constitutionally impermissible prohibition on their ability to sell (and therefore to buy or use) the banned sexual devices.[16] That their complaints pray predominantly—and, in Inserection's case, exclusively—for declaratory and injunctive relief makes clear that their only goal was removal of the challenged portion of the Ordinance. Appellants have never suggested that they are entitled to actual damages resulting from the operation of the Ordinance. Nor have they made any showing that the Ordinance is likely to be reenacted. See supra Section III.A. A fair reading of their complaints reveals that all of their alleged injuries would be remedied by, and therefore all of the possible relief exhausted by, removal of the challenged Ordinance provision. Having already achieved that, there is simply nothing left for us to do. Far from being "likely" that a favorable decision of this Court would have any practical effect on their rights or obligations, Lewis, 494 U.S. at 477, 110 S. Ct. at 1253, in these circumstances it is plainly not possible.

---

[16]    In their complaint, Davenport and Henry claimed that they "are currently suffering a harm, and will continue to suffer an injury, in being unable to purchase and/or sell sexual devices in Sandy Springs or to use them for intimate sexual activity, and in Henry's case, for his art." Inserection alleged that the Ordinance "violates the substantive due process clause of the Georgia and Federal Constitutions because it unjustifiably infringes on a deeply-rooted privacy interest in one's ability to acquire and self-use a sexual device."

31

The Supreme Court has never held that nominal damages alone can save a case from mootness and, although we are aware that a majority of our sister circuits to reach this question have resolved it differently than we do today,[17] we are not convinced that the cases on which they have relied suggest the result that they have reached. Indeed, in neither of the Supreme Court's leading cases on damage awards for constitutional violations was the issue of mootness presented to the Court.

The first of these cases, Carey v. Piphus, 435 U.S. 247, 98 S. Ct. 1042 (1978), involved two students, in separate circumstances, who were each suspended from school without receiving adequate procedural due process. The district court found that the students had been deprived of their procedural due process rights but did not award damages and did not determine whether the

[17]    See, e.g., Morgan v. Plano Indep. Sch. Dist., 589 F.3d 740, 748 & n.32 (5th Cir. 2009) (noting that "[t]his court and others have consistently held that a claim for nominal damages avoids mootness" and collecting cases); Advantage Media, L.L.C. v. City of Eden Prairie, 456 F.3d 793, 803 (8th Cir. 2006) (suggesting that a claim was not moot because the plaintiff "might be entitled to nominal damages if it could show that it was subjected to unconstitutional procedures"); Utah Animal Rights, 371 F.3d at 1257 (majority opinion) ("It may seem odd that a complaint for nominal damages could satisfy Article III's case or controversy requirements, when a functionally identical claim for declaratory relief will not. But this Court has squarely so held." (footnote omitted)); Bernhardt v. County of Los Angeles, 279 F.3d 862, 872 (9th Cir. 2002) ("A live claim for nominal damages will prevent dismissal for mootness."); Van Wie v. Pataki, 267 F.3d 109, 115 n.4 (2d Cir. 2001) (stating in dicta that "plaintiffs in election cases could avoid the potential for mootness by simply expressly pleading that should the election pass before the issuance of injunctive relief, nominal money damages are requested").

32

students would have been suspended if those rights had not been violated. Id. at 251–52, 98 S. Ct. at 1046. The Seventh Circuit reversed, holding in relevant part that the district court should have determined whether suspensions would have been imposed even if due process had been afforded. If the suspensions would not have been otherwise imposed, the students would be entitled to actual damages in the amount of the pecuniary value of each day they missed while suspended. Id. at 252, 98 S. Ct. at 1046. The Supreme Court agreed with this holding. Id. at 254–55, 98 S. Ct. 1047–48. However, the Seventh Circuit had also held that if the students failed to prove damages based on the value of missed school time, they would still be eligible for substantial "nonpunitive" damages based solely on the deprivation of procedural due process. Id. at 252, 98 S. Ct. at 1046. The Supreme Court disagreed with this latter conclusion and held that if the students' suspensions would have been imposed even if procedural due process had been afforded—and, thus, that actual damages based on the value of missed school time were unavailable—they could recover only nominal damages for the deprivation of due process. Id. at 266, 98 S. Ct. at 1053–54.

As a result, the Supreme Court remanded the case to the district court to determine, in the first instance, whether the suspensions were justified and, thus, whether an award of actual damages for missed school time was appropriate. True enough, if the district court determined on remand that actual damages were not

33

available, the students "nevertheless [would] be entitled to recover nominal damages not to exceed one dollar." Id. at 266–67, 98 S. Ct. at 1054. But at no point was that nominal damages award the only remedy available to them. Rather, the Court considered a case in which a live claim for actual damages existed at all levels of the litigation. Accordingly, it did not address mootness and nothing that it held, or even said, controls the mootness issue before us.

Likewise, in Memphis Community School District v. Stachura, 477 U.S. 299, 106 S. Ct. 2537 (1986), the Court noted that nominal damages are the appropriate remedy for a constitutional violation that caused no "actual, provable injury" but never confronted a mootness inquiry. Id. at 308 n.11, 106 S. Ct. at 2543 n.11. In that case a jury returned a substantial damages award for constitutional violations, arguably based on instructions that permitted such an award to be determined by reference to the "value" of the right that was violated in addition to any actual harm sustained by the plaintiff. Id. at 302–03, 106 S. Ct. at 2540–41. The Court held that damages based on the "abstract 'value' or 'importance'" of a constitutional right were simply not recoverable in a case brought under 42 U.S.C. § 1983 because § 1983 damages are limited to those designed to compensate injuries caused by the constitutional deprivation. Id. at 309–10, 106 S. Ct. at 2544–45. Accordingly, the case was remanded for a new trial on compensatory damages and was, therefore, clearly "alive" when the Supreme Court ruled. The Court's

34

comment that nominal damages—and not some abstract value of the right—are the appropriate remedy for a constitutional violation with no attendant actual damages, id. at 308 n.11, 106 S. Ct. at 2543 n.11, says nothing at all about whether nominal damages can save from mootness a case which is otherwise moot.[18]

In Arizonans for Official English v. Arizona, 520 U.S. 43, 117 S. Ct. 1055 (1997), the Court did mention the Ninth Circuit's conclusion that nominal damages are sufficient to save an otherwise moot claim, but it decided the case without reaching the issue relevant here. There, the Ninth Circuit had determined that the claim at issue was not moot on account of a prayer for nominal damages under § 1983 against the State of Arizona. Id. at 61–62, 117 S. Ct. at 1065–66. The Supreme Court reversed because § 1983 actions will not lie against a state and, in any event, Arizona was not a party to the litigation. Id. at 69–70, 117 S. Ct. at 1069–70. Therefore, the claim for nominal damages was simply unavailable. Thus, although it noted in a footnote that what it termed the "nominal damages solution to mootness" did not apply in that case, id. at 69 n.24, 117 S. Ct. at 1070 n.24, the

---

[18]    As noted in the text, in both Carey and Memphis Community School District, the compensatory damages issue was alive throughout the entire litigation. By contrast, the instant case is moot now before the appellate court has decided the constitutional issue. Unlike the situation in Carey and Memphis Community School District, Appellants ask this en banc court to litigate and decide a constitutional issue after the case has become moot, and notwithstanding the fact that even if Appellants are successful in the further litigation, their remedy—nominal damages—would be only a psychic victory.

Court did not address or decide the issue of whether—assuming it is available—a claim for nominal damages could preserve an otherwise moot claim.

In the absence of any guidance from the Supreme Court—and despite the positions adopted in other circuits[19]—we are in substantial agreement with the views expressed by Judge McConnell in his concurring opinion in Utah Animal Rights Coalition v. Salt Lake City Corp., 371 F.3d 1248, 1262–71 (10th Cir. 2004) (McConnell, J., concurring), that a prayer for nominal damages cannot save an otherwise moot case. For the reasons that follow, we are confident that our position finds support in the existing jurisprudence.

As an initial matter, our mootness analysis here is supported by analogy to two related doctrines, both of which the Supreme Court has explored in more detail than the present question: standing and declaratory judgments.

In the context of standing—a doctrine closely connected to that of mootness[20]—the Supreme Court has observed that "[b]y the mere bringing of his

---

[19]    We find it worthwhile to note that, while the circuit courts that have reached this issue have taken a position contrary to ours, our holding is not without support among other members of the judiciary. See Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist., 832 F.3d 469, 482–92 (3d Cir. 2016) (Smith, J., concurring dubitante); Utah Animal Rights, 371 F.3d at 1262–71 (McConnell, J., concurring).

[20]    The Supreme Court had, at one point, described the doctrine of mootness as "standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Friends of the Earth,

suit, <u>every</u> plaintiff demonstrates his belief that a favorable judgment will make him happier." <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 107, 118 S. Ct. 1003, 1019 (1998). However, the Court has denied standing to such litigants, finding that this "psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury." <u>Id.</u> at 107, 118 S. Ct. at 1019. The same is true here. At this point in the litigation, the only redress we can offer Appellants is judicial validation, through nominal damages, of an outcome that has already been determined. Perhaps more than most, we have no doubt that these particular Appellants—having waged a years-long battle against the City—

_____

<u>Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 189, 120 S. Ct. 693, 709 (2000) (quoting <u>Arizonans for Official English v. Arizona</u>, 520 U.S. 43, 68 n.22, 117 S. Ct. 1055, 1069 n.22 (1997)). It has since called that description "not comprehensive" given that the "[s]tanding doctrine functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake," while the mootness doctrine involves a "case [that] has been brought and litigated, often . . . for years." <u>Id.</u> at 190–91, 120 S. Ct. at 709–10. While the fact that parties have invested sometimes substantial resources into litigation "does not license courts to retain jurisdiction over cases in which one or both of the parties plainly lack a continuing interest," this is "surely . . . an important difference between the two doctrines." <u>Id.</u> at 192, 120 S. Ct. at 710; <u>see also</u> <u>U.S. Parole Comm'n v. Geraghty</u>, 445 U.S. 388, 400, 100 S. Ct. 1202, 1211 (1980) (noting "the flexible character of the Art[icle] III mootness doctrine"). Accordingly, while cases considering the standing doctrine may be instructive, we rely on them only by analogy and are cautious to avoid importing the more stringent standing analysis into our mootness holdings.

would enjoy seeing this Court vindicate their cause as a worthy one.[21] They may

truly believe that this purely psychic satisfaction would serve as an effective

remedy for their complained-of injuries. However, as in the standing context,

absent an accompanying practical effect on the legal rights or responsibilities of

the parties before us, we are without jurisdiction to give them that satisfaction.

Likewise, the granting of nominal damages—a trivial sum awarded for

symbolic, rather than compensatory, purposes—may be closely analogized to that

of declaratory judgments.[22] As has been routinely observed, the Declaratory

Judgment Act "enlarged the range of remedies available in the federal courts but

---

[21]    Appellants and amici also suggest that similarly situated individuals in localities with laws similar to the Ordinance would benefit from the judicial imprimatur of a favorable decision. "That may well be so, but the Article III question is not whether the requested relief would be nugatory as to the world at large, but whether [plaintiff] has a stake in that relief." Lewis, 494 U.S. at 479, 110 S. Ct. at 1254.

[22]    Indeed, Judge McConnell observed that "nominal damages were originally sought as a means of obtaining declaratory relief before passage of declaratory judgment statutes." Utah Animal Rights, 371 F.3d at 1265 (McConnell, J., concurring) (citing Douglas Laycock, Modern American Remedies: Cases and Materials 561 (3d ed. 2002) ("The most obvious purpose [of nominal damages] was to obtain a form of declaratory relief in a legal system with no general declaratory judgment act."); 1 Dan B. Dobbs, Dobbs Law of Remedies § 3.3(2), at 295 (2d ed. 1993) ("Lawyers might have asserted a claim for nominal damages to get the issue before the court in the days before declaratory judgments were recognized."); 13A Wright, Miller & Cooper, Federal Practice and Procedure § 3533.3, at 266 (2d ed. 1984) ("The very determination that nominal damages are an appropriate remedy for a particular wrong implies a ruling that the wrong is worthy of vindication by an essentially declaratory judgment.")). For justiciability purposes, we, like Judge McConnell, "see no reason to treat nominal and declaratory relief differently." Id.

38

did not extend their jurisdiction." Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 70 S. Ct. 876, 879 (1950); see also Schilling v. Rogers, 363 U.S. 666, 677, 80 S. Ct. 1288, 1296 (1960) ("[T]he Declaratory Judgments Act is not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right." (citation omitted)). Accordingly, because the federal courts have no jurisdiction over a case that does not involve an Article III case or controversy, a prayer for declaratory relief is insufficient to save an otherwise moot case. See Preiser, 422 U.S. at 401–04, 95 S. Ct. at 2334–35; see also Lewis, 494 U.S. at 479, 110 S. Ct. at 1254–55 ("Even in order to pursue the declaratory and injunctive claims, . . . [plaintiff] must establish that it has a 'specific live grievance' against the application of the statutes . . . ." (quoting Golden v. Zwickler, 394 U.S. 103, 110, 89 S. Ct. 956, 960 (1969)). Given the similarities between the two remedies, we believe that the same is true of a prayer for nominal damages. Nominal damages, like declaratory relief, are a remedy that may be granted by the federal courts upon a proper exercise of our jurisdiction; they are not themselves an independent basis for that jurisdiction. Because a prayer for declaratory relief—by itself and in an otherwise moot case— is insufficient to give a federal court jurisdiction, we believe that the Supreme Court's holdings in the declaratory relief context support our position in this case.

39

Beyond the comfort we draw from analogous doctrines, our decision today reflects the "great gravity and delicacy" inherent in the federal courts' role in passing on the constitutionality of legislative acts. Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 345, 56 S. Ct. 466, 482 (1936) (Brandeis, J., concurring). Our recognition of this delicate balance of power counsels in favor of restraint such that we must generally decline to pass on the constitutionality of legislation unless "as a necessity in the determination of real, earnest, and vital controversy between individuals." Id. at 346, 56 S. Ct. at 482 (quoting Chi. & Grand Trunk Ry. Co. v. Wellman, 143 U.S. 339, 345, 12 S. Ct. 400, 402 (1892)); see also id. at 346–47, 56 S. Ct. at 483 ("The Court will not 'anticipate a question of constitutional law in advance of the necessity of deciding it.'") (quoting Liverpool, N.Y. & Phila. S.S. Co. v. Emigration Comm'rs, 113 U.S. 33, 39, 5 S. Ct. 352, 355 (1885)). The present question does not even rise to the level of a "controversy," let alone one that is "real, earnest, and vital." The Ordinance itself, and with it the necessity of deciding its constitutionality, has ceased to exist and is now no more real than any other hypothetical statute on which the federal courts should routinely decline to pass judgment. Our view of the judiciary's proper role therefore cautions against a disposition on the merits of the present appeal.

Moreover, the lack of any real controversy surrounding the constitutionality of a now-repealed Ordinance highlights yet another problem with the exercise of

40

our jurisdiction in this case: it would surely constitute an impermissible advisory opinion of the sort federal courts have consistently avoided. See, e.g., Rice, 404 U.S. at 246, 92 S. Ct. at 404 ("Early in its history, this Court held that it had no power to issue advisory opinions . . . ."). It has long been established that decisions of this, or any, federal court must be grounded in "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Id. at 246, 92 S. Ct. at 404 (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240–41, 57 S. Ct. 461, 464 (1937)).

Indeed, Hall v. Beals—a case with significant factual similarities to our instant appeal—highlights the advisory nature of any opinion we would render here. 396 U.S. 45, 90 S. Ct. 200 (1969) (per curiam). There the Supreme Court considered a challenge to a Colorado law requiring six months of in-state residency prior to voting in a presidential election. Id. at 46–48, 90 S. Ct. at 200–02. While the appeal was pending, the relevant presidential election occurred, the six months passed, and—most importantly—the Colorado legislature reduced the waiting period to two months. Id. at 47–48, 90 S. Ct. at 201–02. The Court concluded:

> The 1968 election is history, and it is now impossible to grant the appellants the relief they sought in the District Court. Further, the appellants have now satisfied the six-month residency requirement of which they complained. But apart from these considerations, the recent amendatory action of the Colorado Legislature has surely

41

operated to render this case moot. We review the judgment below in light of the Colorado statute as it now stands, not as it once did. And under the statute as currently written, the appellants could have voted in the 1968 presidential election. The case has therefore lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law.

Id. at 48, 90 S. Ct. at 201–02 (citations omitted). The Court accordingly vacated the judgment of the district court and remanded with directions to dismiss the case as moot.

We, like the Supreme Court, must "review the judgment below in light of the [City Ordinance] as it now stands, not as it once did." Under the law as it now stands, the ban on sexual devices is nothing more than a novel hypothetical; an abstract proposition of law on which Appellants urge us to issue an advisory opinion. For more than two centuries, the federal courts have declined to accept such ill-advised invitations. We will not change course now.

Finally, we find it significant that a holding contrary to the one we adopt today would drastically reduce, if not outright eliminate, the viability of the mootness doctrine in the context of constitutional challenges to legislation and other similar suits. Indeed, in both of this Circuit's leading cases on governmental repeal of challenged legislation, Tanner and City of Miami, infra Section III.A, a valid prayer for nominal damages would have negated the fact that the claims for injunctive and declaratory relief were moot and thereby saved the entire case.

42

There, as here, the parties' right to a single dollar in nominal damages is not the type of "practical effect" that should, standing alone, support Article III jurisdiction. If a mere prayer for nominal damages could save an otherwise moot case, the jurisdiction of the court could be manipulated, the mootness doctrine could be circumvented, and federal courts would be required to decide cases that could have no practical effect on the legal rights or obligations of the parties.

For the reasons we have explained, we are simply without power to grant Appellants any practical relief from a cognizable injury within Article III's scope. They requested relief from the Ordinance and they have received it. All that they ask from us here is to label that achievement as laudable. Analogous case law, general principles of justiciability, bedrock tenets of judicial restraint, and the continuing vitality of the mootness doctrine all convince us that such is not a proper function of the federal courts. Accordingly, we must conclude that nominal damages are insufficient to save this otherwise moot challenge.[23]

---

[23] Our holding today that a prayer for nominal damages cannot save this case from mootness does not imply that a case in which nominal damages are the only available remedy is always or necessarily moot. This Court has long recognized that "[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages." KH Outdoor, LLC v. City of Trussville, 465 F.3d 1256, 1260 (11th Cir. 2006) (quoting Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003)). Thus, where an alleged constitutional violation presents an otherwise live case or controversy, a district court is not precluded from adjudicating that dispute. If that court determines that a constitutional violation occurred, but that no actual

43

IV.    Conclusion

For the reasons stated above, this case is MOOT. The appeal is

DISMISSED. The panel opinion remains VACATED. The judgment of the district

court is VACATED[24] and the case is REMANDED with instructions to dismiss the

case.

**DISMISSED.**

---

damages were proven, it is within its Article III powers to award nominal damages. If that plaintiff appeals the determination that no actual damages were proven, the appellate court likewise has jurisdiction to review that decision, because the claim for actual damages maintains the live controversy. That was precisely the situation in Carey. In the same scenario, if the district court had awarded compensatory damages, but the appellate court found some error in the damages award and remanded for a new trial on damages, the claim for damages again would have remained alive throughout the trial, appeal, and remand. This was precisely the situation in Memphis Community School District. Today's holding does not, of course, alter this long-standing view. We hold only that a prayer for nominal damages does not, by itself, save from mootness an otherwise moot case.

[24]    When a case has become moot, we ordinarily dismiss the appeal, vacate the district court's judgment, and remand with instructions to dismiss the case. See Lewis, 494 U.S. at 483, 110 S. Ct. at 1256 ("Our ordinary practice in disposing of a case that has become moot on appeal is to vacate the judgment with directions to dismiss.").

WILSON, Circuit Judge, dissenting, joined by MARTIN, JORDAN, ROSENBAUM, and JILL PRYOR, Circuit Judges:

I dissent because Plaintiffs' request for nominal damages saves this constitutional case from mootness.  This conclusion is far from novel; courts have held, in varying types of cases, that nominal damages save a case from mootness. *See, e.g., Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 748, 748 n.32 (5th Cir. 2009); *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 803 (8th Cir. 2006); *Utah Animal Rights Coalition v. Salt Lake City Corp.*, 371 F.3d 1248, 1258 (10th Cir. 2004);[1] *Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 872 (9th Cir. 2002); *Van Wie v. Pataki*, 267 F.3d 109, 115 n.4 (2d Cir. 2001); *Henson v. Honor Comm. of U. Va.*, 719 F.2d 69, 72 (4th Cir. 1983); *Murray v. Bd. of Trustees, Univ. of Louisville*, 659 F.2d 77, 79 (6th Cir. 1981).

When constitutional rights are violated, it is difficult, if not impossible, to place a monetary value on the infringement.  "[A] civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms."  *City of Riverside v. Rivera*, 477 U.S. 561, 574, 106 S. Ct. 2686,

---

[1] While the majority is "in substantial agreement with the views expressed by Judge McConnell in his concurring opinion in *Utah Animal Rights Coalition v. Salt Lake City Corp*., 371 F.3d 1248, 1262–71 (10th Cir. 2004)," I find Judge McConnell's majority opinion in that same case more persuasive, *see id.* at 1258 (holding that nominal damages save the case from mootness).

2699 (1986).  Civil rights litigation "serve[s] the public interest" and "secures important social benefits that are not reflected in nominal or relatively small damages awards . . . ."  *Id.*  Nominal damages provide a useful mechanism for redressing infringements that cause no actual damages.  This is exactly how the Supreme Court has described nominal damages.  *See* Maj. Op. at 34–35 (recognizing that the Court noted nominal damages as "the appropriate remedy for a constitutional violation that caused no 'actual, provable injury'").  I believe that the most workable option is a bright line rule allowing nominal damages to save constitutional claims from mootness.  When evaluating the significance of nominal damages, "it does not matter whether the underlying claim involves a deprivation of a procedural or substantive constitutionally-based right."  *See Harden v. Pataki*, 320 F.3d 1289, 1301 n.15 (11th Cir. 2003) (internal quotation marks omitted).  "Quite simply, when constitutional rights are violated, a plaintiff may recover *nominal* damages even though he suffers no compensable injury."  *KH Outdoor, LLC v. City of Trussville*, 465 F.3d 1256, 1261 (11th Cir. 2006) (internal quotation marks omitted).

## I.

The majority's concerns about allowing nominal damages to save a constitutional claim from mootness are not as grave as the majority makes them out to be.  The majority states:

> If a mere prayer for nominal damages could save an otherwise moot case, the jurisdiction of the court could be manipulated, the mootness doctrine could be circumvented, and federal courts would be required to decide cases that could have no practical effect on the legal rights or obligations of the parties.

Maj. Op. at 42–43.  But allowing claims to proceed based on nominal damages would lead to no worse jurisdictional manipulation than what happened here: a city repealed a challenged ordinance years into litigation and just days after we granted en banc review.  For nominal damages to save a claim from mootness, the claim would have to be otherwise moot *and* there would have to be no other possible type of damages still available.  The cases that meet this checklist would be limited.  Indeed, the circuits that have held the opposite of the majority on this issue seem to be weathering the storm.  *See, e.g., Morgan*, 589 F.3d at 748, 748 n.32.  Finally, in regards to practical effects, protecting a plaintiff's constitutional rights from infringement, no matter how temporary, is a practical effect.

## II.

The majority's holding is, at best, undermined and, at worst, contradicted by its footnotes.  At first glance, the majority's holding appears to be clear and concise.  The majority states that "nominal damages cannot save an otherwise moot case" and that "[nominal damages] are not themselves an independent basis for [Article III] jurisdiction."  Maj. Op. at 36, 39.  But those two statements have to be reconciled with the majority's statements in footnotes that "our holding here

47

does not foreclose the exercise of jurisdiction in all cases where a plaintiff claims **only** nominal damages" and that "[the majority's holding does] not imply that a case in which nominal damages are the **only** available remedy is always or necessarily moot." Maj. Op. at 28 n.12, 43 n.23 (emphasis added). These latter statements are the result of the majority trying to reconcile its holding with contradictory precedent (Section A). Also, the majority's holding is unworkable and defies the purpose of nominal damages (Section B). Even if the majority does not concede that its holding is foreclosed by precedent or is unworkable, the holding falters because this case would fall within the confines of whatever exceptions these statements from the footnotes set out (Section C).

## A. Contradictory Precedent

In distinguishing *Carey*, a Supreme Court case emphasizing the role of nominal damages, the majority states:

> [W]here an alleged constitutional violation presents an otherwise live case or controversy, a district court is not precluded from adjudicating that dispute. If that court determines that a constitutional violation occurred, but that no actual damages were proven, it is within its Article III powers to award nominal damages. If that plaintiff appeals the determination that no actual damages were proven, the appellate court likewise has jurisdiction to review that decision, because the claim for actual damages maintains the live controversy.

Maj. Op. at 43 n.23. So, according to the majority, nominal damages are appropriate only if actual damages are in play throughout the case but then at the

48

end of the case the plaintiff fails to prove actual damages. And that scenario is different from here because Plaintiffs in this case never requested actual damages. In the other cases awarding nominal damages, the "claim for actual damages maintains the live controversy." Maj. Op. at 43 n.23. However, the majority fails to address the statement in *Carey* that the Supreme Court "believe[s] that the denial of procedural due process should be actionable for nominal damages without proof of actual injury." *Carey*, 435 U.S. at 266, 98 S. Ct. 266. Actionable is defined as "furnishing the legal ground for a lawsuit or other legal action." *Actionable*, Black's Law Dictionary (10th ed. 2014). Therefore, under Supreme Court precedent, one can bring a suit solely for nominal damages, which means that nominal damages defy mootness on their own. This precedent cannot be squared with the majority's statement that "[nominal damages] are not themselves an independent basis for [Article III] jurisdiction." Maj. Op. at 39.

The majority dismisses nominal damages as "psychic satisfaction" or akin to an "advisory opinion." Maj. Op. at 37, 42. Yet, the majority acknowledges that the Supreme Court has held that there are situations where the only relief a plaintiff would receive is nominal damages. *See* Maj. Op. at 33–34 ("[I]f the district court determined on remand that actual damages were not available, the students 'nevertheless [would] be entitled to recover nominal damages not to exceed one dollar.'"). This puts the majority in the position of either admitting that we can

49

give "psychic satisfaction" or that nominal damages are something else. Whatever their answer is, we can award this remedy by itself.

If the majority agrees that a case can result in the award of only nominal damages, then it must concede that nominal damages can save a claim from mootness. *See Carey*, 435 U.S. at 266–67 ("We therefore hold that if, upon remand, the District Court determines that respondents' suspensions were justified, respondents nevertheless will be entitled to recover nominal damages not to exceed one dollar from petititoners."). For without that concession, whenever nominal damages are the last remedy still in play, no matter how late in the case, the case is moot, and there would be no cases where only nominal damages were awarded. But those cases exist. *See Farrar v. Hobby*, 506 U.S. 103, 115, 113 S. Ct. 566, 575 (1992) (affirming the award of only nominal damages). The majority believes that "claim[s] for actual damages maintain[] the live controversy." But "Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case." *Burke v. Barnes*, 479 U.S. 361, 363, 107 S. Ct. 734, 736 (1987). If a court has to have a live case or controversy when it decides a case and a court can award only nominal damages, then nominal damages provide the live case or controversy.

## B.  Unworkable Holding

50

Under the majority opinion, a claim for nominal damages is not moot if "nominal damages would have a practical effect on the parties' rights or obligations." Maj. Op. at 28. Citing a few libel and trespassing examples, the majority provides very little clarity on what constitutes a sufficient practical effect.[2] The majority rules that this case is moot because the ordinance has been repealed. But as the libel and trespassing examples demonstrate, nominal damages are about remedying past wrongs, not future ones. To be clear, the majority concedes there was an Article III injury in this case by dismissing it on mootness grounds instead of on standing grounds. Under the majority's opinion, declaring that someone's constitutional rights have been violated is not a practical effect. Yet making sure someone does not speak poorly about you or come onto your land are practical effects. The reasons for granting less protection to one's constitutional rights than one's land or reputational rights elude me. While the exact borders of your land and protecting your reputation from harm are surely significant, I am inclined to believe that the penumbra of rights contained in the Constitution are at least worthy of similar protection.

---

[2] Moreover, the majority fails to ground its "practical effect" test in binding law—all of the decisions it cites that refer to the concept of practicality are non-binding.

51

The majority bases its ruling, in large part, on a Tenth Circuit concurrence that states, "I see no reason to treat nominal and declaratory relief differently" and "[l]abeling the requested relief 'nominal damages' instead of 'declaratory judgment' should not change the analysis." *Utah Animal Rights Coal.*, 371 F.3d at 1265–66 (McConnell, J., concurring).[3]  But nominal damages are distinct from a declaratory judgment in that nominal damages remedy a past invasion of a right:

> Nominal damages are damages **awarded for the infraction of a legal right**, where the extent of the loss is not shown, or where the right is one not dependent upon loss or damage, as in the case of rights of bodily immunity or rights to have one's material property undisturbed by direct invasion. The award of nominal damages is made as a judicial declaration that the plaintiff's right **has been violated.**

Charles T. McCormick, Handbook on the Law of Damages § 20, at 85 (1935) (emphasis added).  Nominal damages are "[a] trifling sum awarded **when a legal injury is suffered** but there is no substantial loss or injury to be compensated." *Nominal Damages*, Black's Law Dictionary (emphasis added); *see also Brooks v. Warden*, 800 F.3d 1295, 1308 (11th Cir. 2015) (citing *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003) ("[N]ominal damages are not compensation for loss or injury, but rather recognition of a violation of rights.")).  Despite the

---

[3] *See* Maj. Op. at 36 ("[W]e are in substantial agreement with the views expressed by Judge McConnell in his concurring opinion.")

existence of nominal damages, the majority states that "absent an accompanying practical effect on the legal rights or responsibilities of the parties before us, we are without jurisdiction to give them that satisfaction."[4] Maj. Op. at 38. Lower courts are now left with the task of deciding what constitutes a practical effect sufficient to survive mootness. I struggle to comprehend a sufficient practical effect to meet the majority's requirement. The majority's finding that a ruling here would produce no "practical effect" is troubling.

## C. Majority Exceptions Apply Here

If we take the time to consider what a ruling in this case would do, it is clear that a ruling would indeed "have a practical effect on the parties' rights or obligations." Maj. Op. at 28. The City of Sandy Springs potentially violated Plaintiffs' constitutional rights by enacting this ordinance. If we dismiss this case now, no ruling would confirm that such violation occurred, the City would be free to reenact the ordinance at a later date, and Plaintiffs would have to relitigate the

---

[4] The majority's ruling that nominal damages do not adequately alter the legal rights or responsibilities of the parties for purposes of justiciability is difficult, if not impossible, to square with the Supreme Court's ruling in *Farrar* that nominal damages achieve a "material alteration of the legal relationship of the parties" for purposes of determining prevailing-party status for an award of attorney's fees under 42 U.S.C. § 1988. *Farrar*, 506 U.S. at 111 (internal quotation marks and citation omitted). In the Supreme Court's view, "A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Id.* at 113.

case. If however we decide this case and determine that the City of Sandy Springs violated the Constitution in enacting the ordinance, then the City would be stopped from even reenacting the ordinance. That is a practical effect on the City's obligations sufficient to save the case from mootness under the majority's holding. *See id.*

Plaintiffs believe that their rights were violated by the enactment of the ordinance. They are asking for judicial recognition of that right so that it is not violated again. Declaring that their rights were violated is of legal significance. Plaintiffs could feel secure in their knowledge that their rights were violated and have protection from future infringement. Instead, we ignore the possible past injury to the Plaintiffs' rights, forcing Plaintiffs to wait until a second violation occurs to seek vindication. Judges need not go in search of rights that need protection, but when a plaintiff claims that her constitutional rights have been violated, we owe her an answer.

### III.

The majority ignores Plaintiffs' prayer for nominal damages because, in the majority's view, Plaintiffs have "already won," and "there is simply nothing left for us to do." Except Plaintiffs have not obtained everything they want, and there is something left for us to do—that is to determine whether the Plaintiffs' constitutional rights were violated by the now repealed ordinance.

54

For a number of civil rights violations (e.g., free speech, procedural due process), compensable damages may not always exist.  Under the majority opinion, as long as the government repeals the unconstitutional law, the violation will be left unaddressed; the government gets one free pass at violating your constitutional rights.

I respectfully dissent.