[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12676
_____

D.C. Docket No. 1:16-cv-04658-ELR

CHIKE UZUEGBUNAM,
JOSEPH BRADFORD,

Plaintiffs-Appellants,

versus

STANLEY C. PRECZEWSKI,
President of Georgia Gwinnett College,
in his official and individual capacities,
LOIS C. RICHARDSON,
Acting Senior Vice President of Academic and Student Affairs
and Provost at Georgia Gwinnett College,
in her official and individual capacities,
JIM B. FATZINGER,
Senior Associate Provost for Student Affairs for Georgia Gwinnett College,
in his official and individual capacities,
TOMAS JIMINEZ,
Dean of Students at Georgia Gwinnett College,
in his official and individual capacities,
AILEEN C. DOWELL,
Director of the Office of Student Integrity at Georgia Gwinnett College,
in her official and individual capacities,
GENE RUFFIN,
Dean of Library Services at Georgia Gwinnett College,

in his official and individual capacities,
CATHERINE JANNICK DOWNEY,
Head of Access Services and Information Commons,
in her official and individual capacities,
TERRANCE SCHNEIDER,
Associate Vice President of Public Safety and Emergency Preparedness/Chief of
Police at Georgia Gwinnett College,
in his official and individual capacities,
COREY HUGHES,
Campus Police Lieutenant at Georgia Gwinnett College,
in his official and individual capacities,
REBECCA A. LAWLER,
Community Outreach and Crime Prevention Sergeant at Georgia Gwinnett
College,
in her official and individual capacities,
SHENNA PERRY,
Campus Safety/Security Officer at Georgia Gwinnett College,
in her official and individual capacities,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 1, 2019)

Before MARCUS and BLACK, Circuit Judges, and RESTANI,[*] Judge.

PER CURIAM:

Appellants Chike Uzuegbunam and Joseph Bradford, both students at

Georgia Gwinnett College (GGC) at the time they filed this lawsuit, sued multiple

_____

[*] Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

2

GGC officials, pursuant to 42 U.S.C. § 1983, asserting facial and as-applied challenges to the constitutionality of two policies included in GGC's Student Handbook: the "Freedom of Expression Policy" and the "Student Code of Conduct" (the Prior Policies).   While the case was pending before the district court, GGC revised both policies and Uzuegbunam graduated, rendering the claims for declaratory and injunctive relief moot.  The district court dismissed the case as moot, concluding Appellants' claims for nominal damages could not save their otherwise moot constitutional challenges to the Prior Policies.  After review, and with the benefit of oral argument, we affirm.

## I.  BACKGROUND

### A.  *Factual Allegations in the First Amended Complaint*

In July 2016, Uzuegbunam began distributing religious literature in an open, outdoor plaza on GGC's campus.  Shortly after he began these activities, he was stopped by a member of Campus Police who explained Uzuegbunam was not allowed to distribute religious literature (or any literature) at that location, in accordance with GGC's "Freedom of Expression Policy."  Specifically, the policy stated students were generally permitted to engage in expressive activities only in two designated speech zones and often only after reserving them.

Some time later, Uzuegbunam reserved one of the designated speech zones in order to distribute religious literature and speak to students about his religious

3

beliefs. However, soon after Uzuegbunam began speaking, a member of Campus Police approached him and asked him to stop, explaining they had received "some calls" complaining about his speech. The officer informed Uzuegbunam he had only reserved the speech zone for certain specific purposes, not including "open-air speaking," and that he was in violation of GGC's "Student Code of Conduct" because his speech constituted "disorderly conduct."

Given the warnings from GGC Campus Police and the threat of disciplinary action, Uzuegbunam elected to stop speaking entirely and leave the designated speech zone. After this incident, neither Uzuegbunam nor Bradford—another GGC student who shares Uzuegbunam's religious beliefs and desire to speak publicly concerning those beliefs—have attempted to speak publicly or distribute literature in any open, outdoor, generally accessible areas of the GGC campus outside the two speech zones, nor have they engaged in any "open-air speaking" or other expressive activities in the speech zones.

## B. Requests for Relief in the First Amended Complaint

In the section of the complaint entitled "Prayer for Relief," Appellants requested: (1) a declaratory judgment that the Speech Zone and Speech Code Policies, facially and as-applied, violated their First and Fourteenth Amendment rights; (2) a declaratory judgment that Appellees' restriction of their literature distribution violated their First and Fourteenth Amendment rights; (3) a declaratory

4

judgment that Appellees' restriction of their open-air speaking violated their First and Fourteenth Amendment rights; (4) a preliminary and permanent injunction prohibiting Appellees from enforcing the challenged policies; (5) nominal damages; (6) reasonable costs and attorneys' fees; and (7) "[a]ll other further relief to which [they] may be entitled."

Additionally, at the end of each of the four sections describing the individual causes of action, Appellants asserted "they [were] entitled to an award of monetary damages and equitable relief." They also stated they were "entitled to damages in an amount to be determined by the evidence and this Court."

C. *The Motions to Dismiss*

Appellees filed a motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the First Amended Complaint for failure to state a claim. While that motion was pending, GGC revised its "Freedom of Expression Policy" such that students would be permitted to speak anywhere on campus without having to obtain a permit except in certain limited circumstances. GGC also removed the challenged portion of its "Student Code of Conduct." Both revised policies superseded the Prior Policies and have been in full force and effect since February 28, 2017.

As a result of these changes to the Prior Policies, Appellees filed a motion to dismiss the First Amended Complaint as moot. Approximately one year later, the district court having taken no action on the pending motions, Appellees filed a

supplemental brief on the issue of mootness.  Specifically, Appellees apprised the district court of two significant developments: (1) Uzuegbunam's graduation from GGC; and (2) this Court's decision in *Flanigan's Enterprises, Inc. of Georgia v. City of Sandy Springs*, 868 F.3d 1248 (11th Cir. 2017) (en banc), in which we held a prayer for nominal damages generally will not save an otherwise moot challenge to an allegedly unconstitutional policy or law.

In their response to Appellees' supplemental brief, Appellants insisted that, even assuming their claims for declaratory and injunctive relief were moot, a live controversy remained ongoing, in part because the First Amended Complaint, properly construed in their favor, in fact included a request for compensatory damages.  At the end of their response, they indicated that, if the district court disagreed, they should be permitted to amend their complaint to "clarify[]" their request for damages.  Such a clarification, they assured the court, "would be simple, would pose no prejudice, and would allow this dispute to be decided on the merits, rather than technicalities."

### D. The District Court's Order

The district court granted both of Appellees' motions to dismiss, though it based its decision entirely on mootness and did not address whether the First Amended Complaint otherwise stated a claim on which relief could be granted. The court concluded Uzuegbunam's graduation had mooted his claims for

6

declaratory and injunctive relief, and GGC's revised policies mooted Bradford's claims. Specifically, the court concluded GGC had "unambiguously terminated the Prior Policies and there is no reasonable basis to expect that it will return to them."[1]

The court then turned to whether the remaining damages claim was "sufficient to support standing and save this case." The court ultimately concluded Appellants sought only nominal damages, rejecting what it characterized as their "after-the-fact contentions" that they in fact sought compensatory damages. Applying *Flanigan's*, the district court then concluded such a claim for nominal damages could not save the otherwise moot complaint, rejecting Appellants' contentions that their case was distinguishable from *Flanigan's* or fell within any of the exceptions discussed in, or contemplated by, our opinion in that case.

Finally, the court denied Appellants' request for leave to amend their complaint on the ground it was not procedurally proper to seek leave to amend through a response to a motion to dismiss. The court agreed to dismiss the claims without prejudice, but it declined to "go as far as to direct the [Appellants] to file a

---

[1] The district court engaged in a lengthy analysis concerning whether GGC's change in its policies in fact rendered Bradford's claims for declaratory and injunctive relief moot, applying the three-part test this Court identified in *Flanigan's*. Appellants do not challenge this portion of the district court's analysis on appeal. That is, they do not contest the district court's conclusion that their claims for injunctive and declaratory relief are moot. As such, we will not address this portion of the district court's analysis here.

motion for leave to amend," noting it was "up to [Appellants] to decide how to litigate their case."

On the same day the district court entered its order, the clerk entered judgment in favor of Appellees, dismissing the action without prejudice. The instant appeal followed.

## II.  DISCUSSION

We review the dismissal of a case for mootness *de novo*. *Flanigan's*, 868 F.3d at 1255. Appellants raise three issues on appeal concerning the district court's dismissal of the First Amended Complaint. First, they argue the district court erred in concluding the First Amended Complaint did not include a request for compensatory damages. Second, they argue that, even assuming the First Amended Complaint included only a request for nominal damages, this case is distinguishable from *Flanigan's* and dismissal was not required. Finally, they argue we should reverse the district court's dismissal on the ground it abused its discretion when it denied them the opportunity to amend their complaint to add an explicit request for compensatory damages.[2] We will address each argument in turn.

---

[2] Appellants also argue extensively that *Flanigan's* was wrongly decided. However, "[u]nder the prior precedent rule, we are bound to follow a prior binding precedent 'unless and until it is overruled by this Court en banc or by the Supreme Court.'" *United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008) (quoting *United States v. Brown*, 342 F.3d 1245, 1246 (11th Cir. 2003)). Accordingly, we limit our review to whether the district court properly applied *Flanigan's* when it dismissed the First Amended Complaint as moot.

### A. Damages Allegations in the First Amended Complaint

Appellants assert the district court erred in concluding their amended complaint did not request compensatory damages because the court (1) construed the complaint against them, and (2) focused solely on the prayer for relief, rather than considering the complaint as a whole.

As Appellants note, at the motion to dismiss stage, the district court was required to "accept[] the complaint's allegations as true and constru[e] them in the light most favorable to [Appellants]." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012) (internal quotation marks omitted). They contend the district court failed to do so when it construed the allegations that they were entitled to "monetary damages" and "damages in an amount to be determined by the evidence and this Court" against them by concluding those phrases referred solely to nominal damages.

The district court did, as Appellants note, acknowledge the somewhat ambiguous nature of the term "monetary damages" and of Appellants' requests for "damages in an amount to be determined by the evidence and this Court" and "[a]ll other further relief to which [they] may be entitled." But the court did not then, as Appellants contend, arbitrarily construe those admittedly ambiguous phrases

9

against them.  Instead, it viewed the allegations in the context of the rest of the complaint and concluded Appellants could not have been requesting compensatory damages.  We agree with that assessment.

In particular, the district court looked to the prayer for relief—which requested only nominal damages in addition to injunctive and declaratory relief—and to the factual allegations in the complaint.  As to the latter, the court correctly noted that "compensatory damages in a § 1983 suit [must] be based on actual injury caused by the defendant rather than on the 'abstract value' of the constitutional rights that may have been violated."  *Slicker v. Jackson*, 215 F.3d 1225, 1230 (11th Cir. 2000).  Such "actual injury" can include monetary loss, physical pain and suffering, mental and emotional distress, impairment of reputation, and personal humiliation.  *Id.* at 1231.

But Appellants did not allege they suffered any actual injury, instead resting their complaint—and request for damages—on the abstract injury suffered as the result of the violation of their constitutional rights.  In fact, the First Amended Complaint mentions "injury" only twice, and in neither instance does it specify what the injury was.  It also states, at the conclusion of each cause of action, that Appellants "suffered, and continue to suffer, irreparable harm," though, again, without specifying what that harm was.

10

On appeal, Appellants insist, largely through oral argument, that Uzuegbunam, at least, suffered any number of concrete injuries as a result of Appellees' enforcement of the Prior Policies, including loss of time and money traveling to GGC's campus to speak, as well as harm to his reputation and personal humiliation stemming from the actions taken by GGC officials to stop him from speaking.  However, Appellants never identified these injuries to the district court, resting instead on their argument that the district court should broadly construe their vague requests for monetary damages as including *unspecified* compensatory damages, and they make only passing reference in their brief on appeal to the reputational harm suffered by Uzuegbunam.  As a result, these arguments are not properly before us, as they were not raised in the district court or, indeed, properly briefed on appeal.  *See Hurley v. Moore*, 233 F.3d 1295, 1297 (11th Cir. 2000) ("Arguments raised for the first time on appeal are not properly before this Court.").  Because these injuries were not specifically pled in the complaint or articulated to the district court, we cannot fault the court for failing to infer these injuries from the other allegations in the complaint.

Thus, this is not a case in which the court took phrases susceptible to more than one interpretation—e.g., "monetary damages"—and construed them against Appellants.  Rather, the district court simply read those phrases in context and concluded they could have only one meaning: nominal damages.

11

Appellants further assert the district court erroneously focused "solely on the prayer for relief" in concluding the First Amended Complaint did not include a well-pled request for compensatory damages. They claim this was inconsistent with Fed. R. Civ. P. 54(c), which states federal courts "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."

The Supreme Court has instructed federal courts not to "dismiss a meritorious constitutional claim because the complaint seeks one remedy rather than another plainly appropriate one." *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 65 (1978). It has further reminded those courts that "although the prayer for relief may be looked to for illumination when there is doubt as to the substantive theory under which a plaintiff is proceeding, its omissions are not in and of themselves a barrier to redress of a meritorious claim." *Id.* at 66.

Here, contrary to Appellants' assertions, the district court did not "solely" look to the prayer for relief. Instead, it did what *Holt* expressly permits: it "looked to [the prayer for relief] for illumination" because Appellants' other vague requests for "monetary" and other appropriate damages created "doubt as to the substantive theory under which [they were] proceeding." *Id.* There was no other "plainly appropriate" remedy available here beyond the injunctive relief and nominal damages Appellants expressly requested because, as previously discussed, the

allegations in the complaint simply did not support a claim for compensatory damages.

### B. *Applying* Flanigan's

Appellants further argue that, even assuming the First Amended Complaint cannot be read to include an implicit request for compensatory damages, their nominal damages claim presents an ongoing case or controversy notwithstanding our decision in *Flanigan's*. They argue the district court ignored portions of *Flanigan's* suggesting not all claims for nominal damages are necessarily moot.

Briefly, *Flanigan's* involved a challenge to a municipal ordinance that prohibited the sale of sexual devices. 868 F.3d at 1253-54. The plaintiffs alleged the ordinance violated their rights under the Fourteenth Amendment. *Id.* Though the challenged ordinance was never actually enforced against any of the plaintiffs, they nonetheless preemptively challenged the constitutionality of the ordinance, seeking injunctive and declaratory relief and asking the district court to strike down the ordinance as unconstitutional and permanently enjoin its enforcement. *Id.* at 1254. Two of the plaintiffs also sought an award of nominal damages but did not seek compensatory damages. *Id.* at 1254, 1265. While the case was pending before this Court, the city repealed the challenged ordinance, mooting the claims for declaratory and injunctive relief and leaving nominal damages as the only requested relief. *Id.* at 1254, 1263.

13

Turning to "whether a prayer for nominal damages . . . is sufficient to save [an] otherwise moot constitutional challenge," we first acknowledged there were certain cases in which a claim solely for nominal damages would present a live case or controversy:

> To be sure, there are cases in which a judgment in favor of a plaintiff requesting only nominal damages would have a practical effect on the parties' rights or obligations.  Likewise, there are situations in which nominal damages will be the only appropriate remedy to be awarded to a victorious plaintiff in a live case or controversy.  In such circumstances, the exercise of jurisdiction is plainly proper.

*Id.* at 1263-64 (footnotes omitted).  We juxtaposed those cases with those in which an award of nominal damages "would serve no purpose other than to affix a judicial seal of approval to an outcome that has already been realized."  *Id.* at 1264.  We concluded the plaintiffs' case fell decidedly in the latter category because they, in effect, had "already won" by "reciev[ing] all the relief they requested."  *Id.*

We reiterated our holding "does not imply that a case in which nominal damages are the only available remedy is always or necessarily moot," and we noted that where a "court determines that a constitutional violation occurred, but that no actual damages were proven, it is within Article III powers to award nominal damages."  *Id.* at 1270 n.23.  Notably, we limited our discussion in this regard to cases in which both compensatory and nominal damages were pled, but the only available remedy was nominal damages.  *See id.*

14

Appellants argue the district court ignored this apparent limitation on the core holding of *Flanigan's*, "brushing aside the portions of *Flanigan's* that show that nominal damages claims are not automatically moot." Specifically, Appellants take issue with the district court's conclusions that there was no live controversy regarding compensatory damages and that nominal damages would have no practical effect on the parties' rights or obligations. Appellants insist the district court was wrong in both respects.

First, they insist a live dispute about compensatory damages remains ongoing as to Uzuegbunam's challenges to the "enforcement" of the policies against him, noting that if the specific "conduct" of the GGC officials were found to be illegal, Uzuegbunam "could be entitled to compensatory damages." This appears to concern the "as-applied" portion of Uzuegbunam's challenge to the Prior Policies. However, as discussed above, the First Amended Complaint did not include a well-pled request for compensatory damages, in part because it failed to allege any concrete injuries arising from the allegedly unconstitutional conduct of the GGC officials.

Second, Appellants argue that, in any case, awarding nominal damages here "would have a practical effect on the parties' rights or obligations." They identify two such "practical effects": (1) "determin[ing] the disputed boundary over how public colleges can restrict student expression"; and (2) answering the "important

15

question" of whether "GGC officials violate[d] Mr. Uzuegbunam's rights when they censored him."  The first of these is plainly at odds with *Flanigan's*, as any opinion we or the district court issued that did little more than delineate the "boundar[ies]" around public colleges' regulation of student speech would constitute exactly the sort of impermissible advisory opinion *Flanigan's* sought to avoid.  *See Flanigan's*, 868 F.3d at 1269-70.

As to the second "practical effect" Appellants identify, they again focus on the allegedly unconstitutional actions GGC officials took in enforcing the policies, as distinct from the facial challenge to the policies themselves, asserting it would be appropriate for a court to adjudicate whether and to what extent the specific actions taken by GGC officials violated Uzuegbunam's constitutional rights.  But under the explicit exception in *Flanigan's* implicated by Appellants' argument, Appellants' right to receive nominal damages as the result of any unconstitutional conduct on the part of GGC officials would have to flow from a well-pled request for compensatory damages.  The cases we sought to distinguish from *Flanigan's*—cases in which a claim for nominal damages was adequate, on its own, to sustain an action—involved an ongoing controversy regarding compensatory damages throughout the entire litigation.  *See id.* at 1264-67 & n.18, 1270 n.23.  In other words, they all involved a well-pled complaint for compensatory damages, though no actual damages were ultimately *proven*.  *See id.* at 1270 n.23 ("This Court has

16

long recognized that '[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot *prove* actual injury sufficient to entitle him to compensatory damages.'" (alteration in original) (emphasis added) (quoting *KH Outdoor, LLC v. City of Trussville*, 465 F.3d 1256, 1260 (11th Cir. 2006))).

Here, in contrast, the only relief Appellants actually requested, other than declaratory and injunctive relief, was nominal damages, and there has never been any controversy over compensatory damages. While *Flanigan's* contemplates a class of cases in which a claim for nominal damages would be sufficient to maintain a case or controversy, this is not that case, and we decline to carve out any new exception here.[3]  Accordingly, we agree with the district court that this case is "strikingly similar" to *Flanigan's* and apply our precedent to conclude Appellants' claim for nominal damages cannot save their otherwise moot constitutional challenge to the Prior Policies.

---

[3] Notably, Appellants do not explicitly request we carve out any *new* exception here for cases involving an as-applied challenge to an allegedly unconstitutional law or policy that has been enforced against a plaintiff, instead arguing their case falls within the category of cases *Flanigan's* explicitly distinguishes.  To the extent it would be appropriate for us to identify such an exception, this is not the case to do so.  The issue is not well-developed in the record below, as Appellants never presented the district court with the argument that their case was distinguishable from *Flanigan's* on the ground it involved an as-applied—as opposed to solely a facial—challenge to the Prior Policies.  Moreover, in accordance with our description of *Flanigan's*, their argument to the district court that their case falls within the category of cases distinguished in *Flanigan's* presumes their complaint included a well-pled request for compensatory damages, insisting they could recover nominal damages whether or not "they ultimately *receive* compensatory damages."

17

*C. Leave to Amend*

Notwithstanding the above mootness analysis, Appellants insist that, even if we agree with the district court's application of *Flanigan's*, we should reverse the district court's dismissal of their complaint on the ground it improperly denied them the opportunity to amend their complaint to add an explicit request for compensatory damages.  We review a district court's decision to deny leave to amend for abuse of discretion.  *See Santiago v. Wood*, 904 F.2d 673, 675 (11th Cir. 1990).

On appeal, Appellants primarily take issue with the district court's assertion that it was not procedurally proper for them to seek leave to amend via a response to Appellees' motion to dismiss.  However, as our precedent makes clear, the district court was right to be concerned about the procedural mechanism by which Appellants sought to amend their complaint.  *See, e.g.*, *Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018) ("[T]his Court has clearly held that '[w]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.'" (second alteration in original) (quoting *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009))).

As they did in the district court, Appellants continue to focus on the simplicity of the proposed amendment, noting it would have involved simply

18

"adding 'compensatory and' to the prayer for relief and a paragraph describing [their] financial injuries." But even assuming the relative complexity of the proposed amendment would have any bearing on Appellants' responsibility to seek amendment via a properly filed motion, they failed to specifically inform the district court of the substance of their proposed amendment, other than to indicate they would "clarify" that they sought compensatory damages. *See Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018) ("When moving the district court for leave to amend its complaint, the plaintiff must 'set forth the substance of the proposed amendment or attach a copy of the proposed amendment' to its motion." (quoting *Cita Tr.*, 879 F.3d at 1157)). They did not, for example, specify what additional factual allegations they would have included to support their request for compensatory damages.

To the extent that Appellants argue the district court abused its discretion when it entered judgment so soon after issuing its order dismissing the First Amended Complaint as moot, we find such an argument unavailing. Appellants contend they were deprived of the ability to file a procedurally proper motion to amend "[a]fter the district court entered judgment immediately." But even assuming they were precluded from proceeding under Rule 15, *see Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010) (noting that Fed. R. Civ. P. 15(a)(2) "governs amendment of pleadings *before* judgment is entered; it

has no application *after* judgment is entered"), Appellants could still have moved under Rule 60(b) or 59(e) on the ground they could rectify the pleading issues in the First Amendment Complaint through further proposed amendments. *Czeremcha v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, 724 F.2d 1552, 1556 (11th Cir. 1984).

> [A]fter a complaint is dismissed the right to amend under Rule 15(a) terminates; the plaintiff, however, may still move the court for leave to amend, and such amendments should be granted liberally. The plaintiff may also move for relief under Rules 59(e) or 60(b) on the basis of proposed amendments even after the action is dismissed and final judgment is entered.

*Id.* (footnotes and citation omitted). The district court never acted to prevent Appellants from seeking leave to amend following its dismissal of the First Amended Complaint without prejudice, expressly leaving that decision in the hands of Appellants. Accordingly, we can discern no abuse of discretion by the district court in its handing of Appellants' request to amend—a request they only expressed in response to a motion to dismiss.

## III.  CONCLUSION

For the reasons discussed above, we affirm the district court's dismissal of the First Amended Complaint as moot.

**AFFIRMED.**

20